IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 15-cv-00009-RBJ-CBS

ERIN RUNYAN and SEAN LANDO,

      Plaintiffs,

v.

GEOFFREY FEY,

      Defendant.

---

## ORDER on PENDING MOTIONS

---

    Twelve motions are pending and are addressed in this order.  The Court again strongly urges the parties, for their own benefit, to resolve their disputes by a settlement.[1]

## BACKGROUND

    This case is a bitter dispute between former spouses that unfortunately did not end with their divorce.  Erin Runyan and her significant other, Sean Lando, accuse Ms. Runyan's former husband, Geoffrey Fey, of defamation and outrageous conduct arising from numerous alleged slanderous and libelous statements about them, some of which were posted on the Internet.  Second Amended Complaint, ECF No. 34.  Mr. Fey, representing himself *pro se,* counterclaims,

---

[1] In a minute order issued October 21, 2015 the Court directed the parties to engage in a minimum of one non-binding settlement conference with a professional mediator, either a private mediator or with United States Magistrate Judge Craig Shaffer, and the Court directed the parties to confirm with this Court once they have complied with the order.  ECF No. 49.  I also referred the case to Judge Shaffer for such a conference if the parties elected to use his services (which are free of charge).  ECF No. 50.  Apparently the parties participated in a telephone scheduling conference with Judge Shaffer on October 23, 2015, and he directed them to submit confidential settlement memos to him by November 27, 2015.  ECF No. 55.  I do not know whether they complied or whether a settlement conference with Judge Shaffer was ever held. I do know that the parties have not confirmed that they participated in a settlement conference with a professional mediator.  I reiterate this Court's order that they participate in a settlement conference and confirm that they have done so.  If a party refuses to participate in such a conference, I will consider that refusal to be in contempt of this Court's order.

alleging that he is the one who is the victim of defamation and outrageous conduct. He also asserts a claim for malicious prosecution. The parties assert federal jurisdiction based upon diversity of citizenship.

## PENDING MOTIONS

### A. Plaintiffs' Motion to Dismiss Counterclaims [ECF No. 40].

Mr. Fey asserts counterclaims against Ms. Runyan for (1) defamation per se, arising from her allegedly false accusations that he physically abused her and sexually abused their daughter; (2) defamation per quod, arising from the same allegations; (3) malicious prosecution, and (4) outrageous conduct. In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept the well-pleaded allegations of the claim as true and construe them in the claimant's favor. However, the facts alleged must be enough to state a claim for relief that is plausible, not merely speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). A plausible claim is a claim that "allows the court to draw the reasonable inference that the [person against whom the claim is asserted] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Allegations that are purely conclusory are not entitled to an assumption of truth. *Id.* at 681. However, so long as the claimant offers sufficient factual allegations such that the right to relief is raised above the speculative level, he has met the threshold pleading standard. *See e.g.*, *Twombly*, 550 U.S. at 556; *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008).

1. <u>Defamation</u>.

Defamation is a knowingly false communication that holds an individual up to contempt and causes him to incur injury or damage. *Keohane v. Stewart,* 882 P.2d 1293, 1297 (Colo. 1994). Whether a statement is defamatory is a question of law. *Gordon v. Boyles,* 99 P.3d 75,

79 (Colo. App. 2004) (citing *Walker v. Associated Press,* 417 P.2d 486 (Colo. 1966)).  There are certain differences between a written communication (libel) and an oral communication (slander).  However, in general, if a statement is defamatory on its face, damage is presumed, and the plaintiff need not plead special damages.  *Gordon,* 99 P.3d at 79.  Otherwise special damages must be proved as an element of the offense.  *Id.  See generally* Colorado Jury Instructions – Civil §§ 22:1 et seq. (2015 ed.).

Mr. Fey alleges that Ms. Runyan knowingly and falsely informed neighbors, friends and members of the community that he had physically abused her, and that he had sexually assaulted their daughter, A.F.  Such statements, if made, would be defamatory per se as a matter of law.  Construing those allegations in his favor for purposes of a motion to dismiss – and without suggesting or implying anything about the actual truth or falsity of the statements – the Court denies the motion to dismiss the first and second counterclaims.

2. <u>Malicious Prosecution</u>.

Under Colorado law, the elements of a claim of malicious prosecution arising from a prior criminal prosecution are that (1) a criminal case was brought against the plaintiff, (2) it was brought as a result of statements made by the defendant, (3) the case ended in the plaintiff's favor, (4) the defendant's statement was made without probable cause, (5) the defendant's statement was motivated by malice towards the plaintiff, and (6) as a result of the case, the plaintiff had damages.  *See Montgomery Ward & Co. v. Pherson,* 272 P.2d 643, 645 (Colo. 1954); Colorado Jury Instructions – Civil § 17:1 (2015 ed.).  A statement to the police lacks probable cause if it was made without a reasonable and good faith belief that the plaintiff was guilty of the offense with which he was charged.  *See Konas v. Red Owl Stores, Inc.,* 404 P.2d 546, 547-48 (Colo. 1965).

Mr. Fey alleges that on August 4, 2012 Ms. Runyan told law enforcement officers that he had menaced and harassed her by pushing, shoving, or kicking her, resulting in a criminal prosecution in Douglas County Court, case No. 12-M-1590.  He alleges that this case ended in his favor on April 22, 2013.  He alleges that the statements were made without probable cause, were motivated by malice, and caused him to sustain damages.  ECF No. 36 at ¶¶46-51.

Mr. Fey further alleges that Ms. Runyan made four other malicious statements to law enforcement, without probable cause, that resulted in four additional prosecutions that ended in his favor but caused him to sustain damages: August 5, 2012 (case No. 12-M-1580, allegedly ending in his favor on April 22, 2013); September 22, 2012 (case No. 12-M-1921, allegedly ending in his favor on March 25, 2013); January 25, 2013 (case No. 13-M-141, allegedly ending in his favor on May 2, 2013); and June 1, 2013 (case No. 13-M-930, allegedly ending in his favor on August 21, 2013).

Ms. Runyan asks the Court to take judicial notice of court files, which I can do even in ruling on a Rule 12(b)(6) motion.  A transcript of a hearing in the Douglas County Court held on April 22, 2013 shows that, contrary to the allegations in his counterclaims, Mr. Fey entered into a plea of guilty to harassment as a domestic violence incident in case No. 13-M-141.  Transcript of hearing, ECF No. 40-3, at 3.  As part of the plea bargain the court also dismissed cases 12-M-1580 and 1590.  *Id.*  Therefore, the Court concludes that these three cases did not end in Mr. Fey's favor, and they cannot support a claim of malicious prosecution.  However, contrary to the representation in Ms. Runyan's motion, the disposition in case No. 13-M-141 did not dispose of cases 12-M-1921 or 13-M-930.  At this point, therefore, Mr. Fey's malicious prosecution claim as to those two cases cannot be dismissed under Rule 12(b)(6).

3.  <u>Outrageous Conduct.</u>

The elements of this claim are that the defendant (here Ms. Runyan as the "defendant" on the counterclaim) (1) engaged in extreme and outrageous conduct, (2) recklessly or with the intent of causing the claimant severe emotional distress, and (3) that it did cause severe emotional distress.  Colorado Jury Instructions – Civil § 23:1 (2015 ed.).  Outrageous conduct, although often pled, is rarely proved.  Extreme and outrageous conduct is defined as conduct so atrocious as to go beyond all possible bounds of decency such that the conduct is "utterly intolerable in a civilized" world.  *See Rugg v. McCarty,* 476 P.2d 753, 756 (Colo. 1970).  Usually courts dismiss outrageous conduct claims on a motion to dismiss or for summary judgment.

In this case, I am not prepared to dismiss the claim at this time.  If, as alleged by Mr. Fey, Ms. Runyan publicly accused him of sexually assaulting his daughter, and if the accusation was false, then it could amount to outrageous conduct.  Ms. Runyan suggests that the Department of Human Services determined that the accusation was "founded."  However, her "evidence," a letter to her dated October 24, 2012, ECF No. 40-1, only cryptically states that "allegations of neglect and emotional abuse" were deemed founded.  In any event, the findings of the Department would not be conclusive.  Assuming the truth of Mr. Fey's allegation at this stage of the case, dismissal under Rule 12(b)(6) is not appropriate.

**B.  <u>Plaintiffs' Motion to Compel [ECF No. 60]</u>.**

Plaintiffs move to compel Mr. Fey to provide additional responses to interrogatories.  Before he responded to the motion, plaintiffs filed a "reply."  Then Mr. Fey responded, basically indicating that he will provide the information and moot the motion.  This is the product of the

inability or unwillingness of Mr. Fey and plaintiffs' counsel to confer by telephone and resolve such disputes.

Nevertheless, because no one has informed the Court as to whether and to what extent Mr. Fey did supplement his discovery responses, the Court will address the motion.  He must provide a signed response to the discovery.  If he has sought counseling for emotional distress related to the alleged defamatory statements and alleged malicious prosecution, and plans to seek compensation for psychiatric or other counseling expenses, then he must provide the information requested in Interrogatory No. 2, 3 (which in turn must be kept strictly confidential and used only for purposes of this case).  If, however, he is only seeking general damages of emotional distress, he is not required to produce privileged mental health counseling or treatment information.  *See, e.g., Hoffman v. Brookfield Republic, Inc.,* 87 P.3d 858, 862-63 (Colo. 2004).  He is not required to provide contact information for Brooke Hecht (Interrogatory No. 13).  With those exceptions, the motion to compel is granted, and he should provide complete responses no later than December 31, 2015.

### C.  Plaintiff Erin Runyan's Motion for Summary Judgment on Defendant's Counterclaims [ECF No. 61].

As indicated above, the Court granted plaintiffs' motion to dismiss Mr. Runyan's malicious prosecution counterclaim insofar as it arose from three of the five Douglas County Court cases listed by Mr. Fey, finding that court records showed that they were not resolved in his favor.  This motion for summary judgment addresses the other two cases (12-M-1921 and 13-M-930).  However, Ms. Runyan provides no evidence clearly establishing that either of them was not resolved in Mr. Fey's favor.  Nor does she provide evidence clearly establishing her alternative argument that only her brother and Mr. Lando provided information to Douglas

County law enforcement that resulted in the instigation of 13-M-930 (and the inference that her own statements did not contribute to the ultimate decision to file the case).  I cannot conclude on the present record that there is no genuine dispute of fact regarding the malicious prosecution counterclaims concerning those two Douglas County cases.

Nor has Ms. Runyan shown that there is no genuine dispute about whether allegedly defamatory statements were made within the period of limitations.  One must bear in mind that the statute of limitations on libel and slander is one year "after the cause of action accrues." C.R.S. § 13-80-103.  A cause of action accrues "on the date both the injury and its cause are known or should have been known by the exercise of reasonable diligence."  C.R.S. § 13-80-108(1).  At this point, what statements were made, when they were made, and when they were or should have been discovered are disputed material facts.

Finally, Ms. Runyan provides no evidence that shows, beyond any genuine dispute, that she did not falsely accuse Mr. Fey of sexually assaulting his daughter.

Accordingly, if the parties refuse to settle their disputes, these issues will have to be resolved at trial.

**D.  Defendant's Motion to Compel [ECF No 64].**

Mr. Fey asks the Court to compel Kelly Urestta, the Principal of Bear Canyon Elementary School, to comply with a subpoena for records of communications between him and any agent of the Douglas County School District, communications between Ms. Runyan and any agent of the District, and the names and contact information for PTA members and agents of the District who were responsible for publication of a memorial page in the Bear Canyon Elementary School yearbook.  The District, through counsel, responds that, following informal discussions with Mr. Fey, it produced all the information in its possession (documents and otherwise) that is

responsive to the subpoena.  ECF No. 68.  According to the District, Mr. Fey then made requests beyond the scope of the subpoena.  In his reply Mr. Fey suggests that he does not believe that the District has, in fact, produced all the responsive information that it has.  ECF No. 72.  I am not convinced.  The motion to compel is denied.

**E.  Defendant's Motion to Compel [ECF No. 65].**

This motion asks the Court to compel Nuance Communications, Ms. Runyan's former employer, to produce communications and other information relating to the allegation that Mr. Fey stole confidential patient information from Nuance.  Nuance objected on multiple grounds, first with typical lawyer-generated general objections that do not advance the ball at all, and next with objections purportedly specific to the subpoena, which likewise amount to essentially nothing.

Having flexed his muscles with all these objections, counsel finally gets to the point and states that Nuance has no documents or information responsive to the request that is not privileged or work-product.  ECF No. 67-1 at 3.  In reply Mr. Fey grumbles a little about Nuance's response (not without reason), but he entirely ignores the one salient point – that Nuance claims to have no responsive, non-privileged documents.  I also note that Ms. Runyan has apparently backed off her charge that Mr. Fey stole documents from Nuance.  *See* ECF No. 43.  The bottom line is that the Court has no basis at this point to compel Nuance to do anything.

**F.  Defendant's "Emergency" Motion for Limited Representation [ECF No. 73].**

I think Mr. Fey might be asking the Court to appoint a lawyer to represent him but only as to a response to plaintiffs' motion for summary judgment.  In the first place he apparently did not need representation because the Court denied the summary judgment motion.  Nor would or could the Court appoint a lawyer for him anyway.  He absolutely should have a lawyer who

could introduce greater professionalism to the process.  He should hire one.  He is not an

indigent person who might qualify for a volunteer lawyer under the Court's Civil Pro Bono

Program.

### G.  Defendant's "Emergency" Motion for a Protective Order [ECF No. 76].

Mr. Fey asks the Court to order plaintiff's attorney Ruttenberg to cease all electronic

communication with him (emails, text messages).  He claims that Ms. Ruttenberg's harassment

has caused him to seek medical attention.  To reflect the depth to which these people have sunk,

he says he canceled an exchange of disclosures at Kinko's because Ms. Ruttenberg stated she

was bringing an armed body guard.  Ms. Ruttenberg responds that she sends text messages

because Mr. Fey refuses to communicate [by phone, I presume] and pretends not to receive email

communications.  She attaches a chain of text messages.

Mr. Fey, you don't need (or deserve) a protective order that would prevent Ms.

Ruttenberg from communicating with you.  You are representing yourself pro se, so Ms.

Ruttenberg has to communicate with you.  If the two of you cannot speak to each other civilly,

then mail, email or text messages are all she has.  But see my bolded message to all parties at the

end of this order.  And, knock off the aggressive and inappropriate language.

### H.  Plaintiff's Motion for Summary Judgment on Their Claims for Defamation [ECF No. 79].

I discussed defamation per se earlier in this order.  Plaintiffs cite approximately seven

statements posted by Mr. Fey through various Internet channels that they argue are defamatory

per se.  I agree as to some of the statements, but in large part what these various postings

demonstrate is that Mr. Fey is immature, has a foul mouth, and is not inhibited when it comes to

vile public expression of his negative opinions about Ms. Runyan and Mr. Lando.  One must also

bear in mind that there is a difference between statements of fact and expressions of opinion. The latter are actionable as defamatory only if they imply the allegation of undisclosed defamatory facts as the basis for the opinion.  *See TMJ Implants v. Aetna, Inc.,* 498 F.3d 1175, 1183 (10th Cir. 2007) (interpreting Colorado law).  Thus, whether a statement is one of "pure opinion" requires the Court to determine (1) whether it is "sufficiently factual to be susceptible of being proved true or false," and (2) "whether reasonable people would conclude that the assertion is one of fact."  *Lawson v. Stow,* 327 P.3d 340, 348 (Colo. App. 2014) (internal citations and quotation marks omitted).

Turning to the specific statements challenged by the plaintiffs, I find and conclude as follows:

1.  On August 27, 2014 Mr. Fey posted a statement on the Internet, specifically to the Pinterest web site, as follows: "The world will know how [A.F.'s] mother filed motions to take her father away from her forever."  Ms. Runyan responds that the statement was false, and she never filed a motion to terminate Mr. Fey's parental rights, only to relocate with the child to Florida.  The Court concludes, as a matter of law, that this statement is not defamatory per se.  Even if the statement were true, the gist of it is that Ms. Runyan sought full custody ("parenting time" ) of their child.  It is not unlawful for a parent to want full custody of a child upon the dissolution of a marriage.  The appropriate way to make any parenting time request is in a petition or motion filed in a domestic relations case.

2.  In the same posting Mr. Fey continued: "She took a child with a compromised immune system and turned her life into a three ring circus.  What the f*** did she tink [sic] would happen."  ECF No. 79-1 at 5 (asterisks added).  Ms. Runyan responds that the statement is false, that A.F. died of natural causes, and that no medical or law enforcement personnel ever

suggested otherwise.  The Court concludes that the statement in paragraph number 2 above is not defamatory per se.  The statement, "[she] turned her life into a three ring circus" is a vague expression of opinion that is not susceptible of being proved true or false.

3.  On September 14, 2014 Mr. Fey posted a statement on "Cheaterville," apparently an online dating web site.  Ms. Runyan characterizes the statement as accusing her of hurting and killing A.F. in retaliation for her filing for divorce.  That is not an accurate characterization.  The statement in its context reads, "Erin Runyan had an affair with Simone Sasia while she was married.  Simone was the father of her daughters [sic] friend and classmate.  When her husband discovered the affair she lied to the police and had him arrested, then tried to take the father's child from him.  Shortly after that she began to **** Sean Lando before she was divorced.  *She told Simone Sasia she loved him and he threw her to the curb, so to retaliate she hurt her only child and now her child is dead*."  ECF No. 79-1 at 23 (asterisks in the original, emphasis added).  Ms. Runyan responds that the statement is false, and that A.F. died of natural causes.  Plaintiff's focus appears to be on the italicized portion of the statement.  The Court concludes that it could be defamatory, but it is not necessarily defamatory on its face.  If it were interpreted to mean that in retaliation for Mr. Sasia's ending his relationship with Ms. Runyan, Ms. Runyan physically hurt A.F., ultimately contributing to her death, then it would be defamatory.  But it could be interpreted, in context, to mean that A.F. was emotionally hurt by the breakup of the Sasia relationship followed by the initiation of the Lando relationship, and that her later death had nothing to do with it.

4.  On September 23, 2014 Mr. Fey posted a statement on the Pinterest web site.  The portion of the statement that Ms. Runyan claims to be defamatory per se reads: "Broke A.F.'s heart which led to her death.  Left her alone to die all by herself."  ECF No. 79-1 at 25.  Once

again Ms. Runyan responds that A.F. died of natural causes.  She adds that she did not abandon A.F. at the hospital, and that she was there when A.F. died.  The Court concludes that the first statement quoted in paragraph 4 above ("broke her heart") is an expression of opinion that is not actionable.  In the argument portion of the pending motion Ms. Runyan states that the second statement (that she left A.F. alone to "die all by herself") is not defamatory per se.  ECF No. 79 at 6.

5.  On November 26, 2014 Mr. Fey sent a Facebook message to Sean Lando's sister that states, "Do you ever wonder if Sean raped [A.F.]?  I do all the time.  Where did the hand prints come from?  Do you think they tried to set me up and frame me for rape?"  ECF No. 79-3 at 3.  Ms. Runyan responds that Mr. Lando did not rape A.F., nor did anyone else.  The Court concludes that the Facebook posting is defamatory per se.  The fact that he poses the statement as a question rather than an outright declaration doesn't save it in my view.  The statement implies that Sean Lando might have raped A.F., and it is as offensive as the alleged statement attributed by Mr. Fey to Ms. Runyan (discussed in relation to ECF No. 40 *supra)* that Mr. Fey had sexually assaulted A.F.  Assuming that the implication is false, there will be an award of damages for this statement.  I note, however, that the statement appears to have been made to a limited audience consisting of Mr. Lando's sister, who presumably did not believe it.

6.  On December 29, 2014 Mr. Fey posted a statement on Facebook that included the statement, "I have seen a video of [Sean Lando] abusing his child."  ECF No. 79-4 at 3.  Plaintiffs respond that there is no such video, and that Mr. Lando never abused either of his children.  The Court concludes that the statement is defamatory per se and creates liability unless Mr. Fey can prove that it was a true statement.

7.  In the same Facebook posting Mr. Fey called A.F.'s mother (Ms. Runyan) a "c***,"
and stated that "she broke more commandments then [sic] a serial killer."  (asterisks added).  He
also referred to A.F. as a "murdered child."  ECF No. 79-4 at 3, 4.  The Court concludes that the
first and second statements in paragraph 7 above are expressions of opinion that are not
actionable.  Characterizing A.F. as a "murdered child" could be defamatory if, in context, Mr.
Fey was stating that Mr. Lando (or Ms. Runyan) murdered A.F.  However, the context includes
the previous sentence wherein, after accusing Mr. Lando of abusing his own child, Mr. Fey
states, "Let me say this, Sean better pray to G-d I never think he did that."  The implication is
that Mr. Fey did not, at that time, think that Mr. Lando had abused A.F.  In context, I conclude
that the statement is not defamatory per se.

## I.  Defendant's "Emergency" Motion for an Evidentiary Hearing [ECF No. 82].

Mr. Fey asks the Court to hold a hearing concerning what he claims is unethical conduct
by plaintiffs' lawyer, Ms. Ruttenberg.  He accuses her of lying to the Court, encouraging non-
parties not to comply with his subpoenas, and other misconduct.  Ms. Ruttenberg responds
(correctly) that Mr. Fey did not comply with the duty to confer pursuant to Local Rule 7.1A.  She
adds that she doesn't know what he's talking about, and that he hasn't presented any factual or
legal support that would justify a hearing.

There is a process for accusing a lawyer of unethical conduct.  One files a grievance with
the Office of Attorney Regulation Counsel, and that Office takes it from there.  And Ms.
Ruttenberg is right about one thing – Mr. Fey has not presented any facts that create any type of
prima facie indication that Ms. Ruttenberg has misrepresented facts to the Court or otherwise
engaged in unethical conduct.  I do believe that Ms. Ruttenberg has stirred the pot unnecessarily
with the length and shrillness of her pleading style.  Sometimes lawyers get so caught up in their

client's cause (and the story that the client tells them) that they forget to provide a calm, professional filter.  On the other hand, some of the things that we know Mr. Fey has said, because he posted them on the Internet, are sufficiently ugly that he is bringing a shrill response on himself.  The bottom line is that if he wants to press his ethics charges, he should contact the Office of Attorney Regulation Counsel.

**J.   Defendant's "Emergency" Motion for an Evidentiary Hearing [ECF No 86].**

Mr. Fey asks the Court to hold a hearing to address a statement by Ms. Runyan in an affidavit in support of summary judgment.  The statement's substance is that she never filed a motion to terminate Mr. Fey's parental rights.  He says this statement is demonstrably false. Maybe it's false, maybe it isn't.  This Court isn't going to hold a hearing every time one of these ex-spouses believes that the other one was less than truthful in divorce court or in a juvenile proceeding.  This Court's concern is the present case.  If Mr. Fey thinks that a statement in an affidavit is false, and if it is material to a pending motion, he can say so and present evidence of falsity in a counter affidavit.  At trial – if these parties push this case all the way to trial – credibility will be an important factor, and evidence of misrepresentations will bear on the party's credibility.

**K.   Defendant's Motion to Subpoena D.T. Match.Com [ECF No. 87].**

The gist of this motion is that Mr. Fey believes that plaintiffs' original complaint accused him of murdering his father.  That is baloney.  I have read all three versions, and none of them says that.  Mr. Fey wants to subpoena Match.com, an online dating site, to obtain materials he submitted to that company.  What this has to do with the present case is hard to discern, but it seems that it has to do with an affidavit that a former girlfriend, Ms. Kruse, signed in this case.  I found it, or at least I think I did: ECF No 78-2.  What she says, among other things, is that in July

2013 she did not think Mr. Fey was showing signs of emotional distress over the death of his father.  That isn't even remotely a suggestion that he was complicit in his father's death.

The old expression that comes to mind is, "you can't make this stuff up!"  The things that these people are saying and doing in this federal court lawsuit are, at times, almost too bizarre to believe.  In any event, this motion is denied.

**L.   Defendant's Motion for Summary Judgment Against Plaintiff Lando [ECF No. 93].**

This motion asks the Court to grant summary judgment dismissing Sean Lando's claims against him.  The substance of the motion reflects Mr. Fey's incorrect understanding of what makes a claim appropriate for summary judgment.  Suffice it to say that, in response to plaintiffs' motion for summary judgment, ECF No. 79, I concluded that two statements that Mr. Fey posted on Facebook concerning Mr. Lando are defamatory per se.  Summary judgment dismissing Mr. Lando's claims is not appropriate.

**ORDER**

1.  ECF No. 40 is granted in part and denied in part.  The Court dismisses the malicious prosecution counterclaim insofar as it arises from case nos. 12-M-1580, 12-M-1590, and 13-M-141.

2.  ECF No. 60 is granted in part and denied in part.  Mr. Fey is ordered to provide supplemental discovery responses as indicated in this Order.

3.  ECF No. 61 is denied.

4.  ECF No. 64 is denied.

5.  ECF No. 65 is denied.

6.  ECF No. 73 is denied.

7.   ECF No. 76 is denied.

8.   ECF No. 79 is granted in part and denied in part.  The Court finds that some of the

challenged statements posted by Mr. Fey via the Internet are defamatory per se.

9.   ECF No. 82 is denied.

10.  ECF No. 86 is denied.

11.  ECF No. 87 is denied.

12.  ECF No. 93 is denied.

**The Court notifies the parties that it will not entertain any further motions unless**

**there is good faith compliance with Local Rule 7.1A.  That means I will not accept any**

**more nonsense such as Mr. Fey's alleged refusal to talk to Ms. Ruttenberg or vice-versa.  If**

**a party attempts to confer (talk) to the other party, and the other party refuses, then I will**

**deem the attempt to be compliance and the refusal to have been in violation of the rule and**

**will impose appropriate sanctions.**

DATED this 22nd day of December, 2015.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge